UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN DAILY QUEEN CORPORATION,

    Plaintiff,

MARCIA MORSE,

    Defendant.

U.S.D.C. No.
Judge
Magistrate Judge

---

Matthew J. Boettcher (P40929)
PLUNKETT COONEY
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4035
mboettcher@plunkettcooney.com

---

## COMPLAINT

Plaintiff, American Dairy Queen Corporation ("ADQ"), by its attorneys, Plunkett Cooney, for its Complaint against Defendant, Marcia Morse, states:

### IDENTIFICATION OF PARTIES

1.     ADQ is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 7505 Metro Boulevard, Edina, Minnesota. ADQ is the franchisor in the Dairy Queen® franchise system.

2.     Upon information and belief, Defendant Marcia Morse is a citizen and resident of the state of Michigan.

### JURISDICTION AND VENUE

3.     Through this action, ADQ seeks to stop Defendant Marcia Morse's unlawful trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et*

*seq.* This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, as ADQ's claims arise in part under federal law. This Court may also exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between the parties, and the value of the rights ADQ seeks to protect exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant resides within this district, and the events giving rise to ADQ's claims occurred within this district.

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

### A. The Dairy Queen® Marks

5. The name Dairy Queen® was originated by ADQ's predecessor, McCullough's Dairy Queen, in 1940. Since its origination, the Dairy Queen® trademark and the other Dairy Queen® Marks have been used continuously by ADQ, its predecessors, and those that ADQ and its predecessors have franchised or licensed to use them. The Dairy Queen® Marks have been used in connection with the sale of soft-serve, frozen and semi-frozen dairy products, frozen and semi-frozen drink products, cooked food products, and other products and services throughout the United States and in several foreign countries. Currently, over 5,800 Dairy Queen® restaurants exist and operate throughout the United States and abroad. Dairy Queen® restaurants operate under franchise or license agreements with ADQ or one of ADQ's territorial subfranchisors.

6. ADQ and its affiliates are the owners of the federally registered Dairy Queen® trademarks and service marks that are licensed for use in Dairy Queen® restaurants (collectively the "Marks"). Most of the federally registered Marks are identified in the attached Exhibit A. ADQ and its predecessors have spent large sums of money advertising and promoting the Marks throughout the United States, including the state of Michigan. To help assure the uniformity and

quality of products sold under the Marks and to ensure that all Dairy Queen® restaurants are maintained in an attractive, uniform, and clean manner, ADQ and its predecessors have continuously devoted substantial amounts of time and money to the inspection of franchised restaurants. In addition, ADQ and its predecessors have spent substantial amounts of time and money to maintain and improve the Dairy Queen® franchise system. These substantial efforts include, but are not limited to: (1) the development, improvement, and inspection of machines used in the production and sale of Dairy Queen® products; (2) the maintenance of product quality; (3) the development of methods of improving the quality, taste, and uniformity of products sold by franchise operators throughout the United States and abroad; (4) the development of uniform designs and markings for containers in which products are sold to consumers; (5) the licensing of the use of other ADQ trademarks to Dairy Queen® franchisees; and (6) the training and education of franchisees or their managers in the proper operation of Dairy Queen® restaurants. As a result of the efforts and expenditures of ADQ and its predecessors, the Marks have become associated in the minds of the consumer public with uniform products of consistently high quality, sold only in clean and attractive surroundings, and operated by persons following substantially identical sales and operating methods and procedures.

**B.     Defendant Morse Is Displaying ADQ's Marks In Violation of Federal Trademark Law**

7.     Before Defendant assumed ownership of the restaurant located at 5743 North Lapeer Road, North Branch, Michigan, the restaurant was a properly licensed Dairy Queen® restaurant for over 48 years. The previous owners, former ADQ franchisees, filed for bankruptcy and closed the restaurant. The restaurant has been non-operational as a Dairy Queen® franchise since March 31, 2009.

8. At or around the time the former ADQ franchisees filed for bankruptcy, Defendant Morse purchased the restaurant.

9. Defendant did not accept assignment or otherwise enter into a Dairy Queen® franchise agreement when she purchased the restaurant and she is therefore not permitted to use the Dairy Queen® Marks in the operation of her restaurant.

10. Soon after purchasing the former Dairy Queen® location, Defendant reopened as a "Dairy King" restaurant. Defendant's Dairy King restaurant sells products similar to those sold in licensed Dairy Queen® restaurants, including ice cream and other frozen treat products.

11. Morse sells those competing products while continuing to display many of ADQ's trademarks, the very trademarks that ADQ's former franchisees displayed when they were operating a Dairy Queen® franchise at the same location as the "Dairy King." Among other things, Morse's Dairy King restaurant displays ADQ's interior menu boards, and point of purchase materials that include ADQ's photography and advertising materials as well as ADQ's trademarked Dairy Queen® "curl" on each of the soft serve photographs. Morse also continues to display two large wall murals. One mural displays the trademarked Dairy Queen® "curl" on the banana split and ADQ's Dilly Bar® novelty. The second mural displays ADQ's Ultimate Burger with the Dairy Queen® logo temporarily covered by a handwritten "Dairy King" sign. Morse is using and displaying ADQ's trademarked Dairy Queen® soft serve "cone with the curl" drive thru stanchion with ADQ's trademark Dairy Queen® clearly visible on the cone portion. Finally, Morse's restaurant sells imitation versions of ADQ's trademarked products, using ADQ's trademarks to do so. Indeed, Defendant has simply posted handmade signs covering the pictures on the menu boards of some of ADQ's most popular products. For example, covering the sign for ADQ's Blizzard®, Defendant has posted a handmade sign for Dairy King's "Snow

4

Storm." In addition, Defendant has posted a handwritten sign for a "Nutt Parfait" in the place of the sign for ADQ's Peanut Buster® Parfait. Morse also offers for sale a "DK Latte," advertised in connection with photographs of ADQ's trademarked MooLatte® frozen coffee treat. Copies of photographs showing Dairy King's unauthorized display of ADQ's trademarks are attached as Exhibit B.

12. When ADQ learned that Morse continued to use ADQ's trademarks in connection with the sale of confusingly similar products, ADQ immediately attempted to contact the Defendant to demand that ADQ's trademarks be removed from the restaurant. ADQ has demanded in numerous messages to the Defendant that the Dairy King remove immediately all Dairy Queen® trademarks.

13. Defendant has ignored ADQ's demands that she remove ADQ's trademarks from the restaurant. Instead, Defendant's Dairy King uses ADQ's trademarks and copyrighted materials to sell products confusingly similar to the products sold by licensed Dairy Queen® franchisees. Defendant's continuing trademark infringement causes irreparable harm to ADQ's customer goodwill and constitutes a violation of ADQ's federal trademark rights. Defendant's refusal to remove ADQ's trademarks has left ADQ no alternative but to commence this action.

### COUNT I - FEDERAL TRADEMARK INFRINGEMENT

14. ADQ incorporates herein by reference the preceding paragraphs of this Complaint.

15. Marcia Morse owns and operates the Dairy King, which displays numerous ADQ trademarks in connection with the sale of products that are confusingly similar to the products sold by ADQ's franchisees. This continuing, deliberate, unlawful, and fraudulent display of ADQ's Marks is likely to cause confusion, mistake, and deception among the consumer public as to the affiliation of the store with ADQ. Defendant's unauthorized use of the Marks constitutes an effort

5

to dilute, destroy, and appropriate to herself the goodwill, trade name, trademarks, and service marks of ADQ. The Defendant's conduct infringes on the trademark rights that are owned by ADQ and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

16. The Defendant's conduct has subjected and will continue to subject ADQ's rights in its trade name, trademarks, and service marks to irreparable injury for which ADQ has no adequate remedy at law. In addition, the Defendant has profited and will continue to profit, and ADQ has been damaged financially and will continue to be so damaged, until the Defendant ceases her intentional unlawful conduct.

17. In addition to injunctive relief, pursuant to 15 U.S.C. § 1117, ADQ is also entitled to recover damages caused by the unlawful display of its trademarks and attorneys' fees incurred in connection with this action.

## COUNT II - FALSE DESIGNATION AND MISREPRESENTATION OF ORIGIN

18. ADQ incorporates herein by reference the preceding paragraphs of this Complaint.

19. The Defendant's above-referenced conduct constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

20. By reason of the foregoing, ADQ has suffered and continues to suffer irreparable harm to its reputation and goodwill for which ADQ has no adequate remedy at law. In addition, ADQ has been damaged financially and will continue to be so damaged until the Defendant ceases her intentional unlawful conduct.

21. In addition to injunctive relief, pursuant to 15 U.S.C. § 1117, ADQ is also entitled to recover damages caused by the unlawful display of its trademarks and attorneys' fees incurred in connection with this action.

## COUNT III - FEDERAL TRADEMARK DILUTION

22. ADQ incorporates herein by reference the preceding paragraphs of this Complaint.

23. The Dairy Queen® Marks are famous marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

24. The actions and conduct of the Defendant as set forth above constitute dilution of the famous Dairy Queen® Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

25. ADQ is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

26. By reason of the foregoing, ADQ has suffered, and will continue to suffer, irreparable damage to its reputation and goodwill for which ADQ has no adequate remedy at law.

27. Pursuant to 15 U.S.C. § 1117, ADQ is entitled to recover damages from the Defendant caused by her unlawful use of ADQ's trademarks, as well as the attorneys' fees ADQ incurs in connection with this action.

## COUNT IV - MISAPPROPRIATION OF GOODWILL

28. ADQ incorporates herein by reference the preceding paragraphs of this Complaint.

29. The unauthorized use of ADQ's trademarks and trade names, as set forth above, constitutes unfair competition and misappropriation of ADQ's valuable goodwill, reputation and business property.

30. ADQ has had a long-standing presence in the Michigan market, such that ADQ's trademarks have developed substantial customer recognition and goodwill.

31. By operating a directly competitive restaurant from the same location for the same customers and using ADQ's Marks in connection with her Dairy King business, the Defendant has misappropriated ADQ's goodwill and is using that goodwill for her direct benefit and profit.

32. As a direct result of the Defendant's actions, as described in the preceding paragraphs, ADQ has been damaged.

33. ADQ is entitled to an accounting of the Defendant's earnings and revenues for her unauthorized misappropriation of ADQ's goodwill.

WHEREFORE, ADQ prays for judgment against Defendant, Marcia Morse, as follows:

A. For a permanent injunction preventing the Defendant and all others in active concert or participation with the Defendant, from using any or all of the trademarks associated with ADQ and its franchise system;

B. For damages for the Defendant's unauthorized use of ADQ's Marks; and

C. For such other and further relief as the Court deems just and appropriate.

| GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A. | PLUNKETT COONEY |
|---|---|
| By: /s/ Jason J. Stover<br>Jason J. Stover (#30573X)<br>Erin B. Stein (#0390260)<br>Attorneys For Plaintiff<br>American Dairy Queen Corporation<br>500 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Telephone: (612) 632-3000<br>Facsimile: (612) 632-4444<br>jason.stover@gpmlaw.com | s/Matthew J. Boettcher<br>MATTHEW J. BOETTCHER (P40929)<br>Attorneys for Plaintiff<br>American Dairy Queen Corporation<br>38505 Woodward Avenue, Suite 2000<br>Bloomfield Hills, MI 48304<br>(248) 901-4035<br>(248) 901-4040 - fax<br>mboettcher@plunkettcooney.com |

Dated: November 22, 2010